UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAZE ROBERT DOWNEY,

    Plaintiff,

    v.      CAUSE NO. 3:21-CV-234-RLM-MGG

JASON, et al.,

    Defendants.

OPINION AND ORDER

Blaze Robert Downey, a prisoner without a lawyer, filed this action under 42 U.S.C. § 1983. He alleges that when he arrived at Indiana State Prison in January 2021, other inmates immediately began threatening him. Deputy Warden Jason Nowatzke moved him to another cell, but he claims the lock on the cell was broken for nearly two weeks. He further claims that his request for protective custody was denied in February 2021 even though other inmates were harassing and threatening him. The court granted him leave to proceed on a claim against Deputy Warden Nowatzke for monetary damages for failing to protect him from other inmates in January and February 2021, and on a claim for injunctive relief against Warden Ron Neal in his official capacity related to his ongoing need for protection from other inmates at ISP.

The defendants move for summary judgment on the ground that Mr. Downey didn't exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. Dunn v. Menard, Inc., 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009).

The court must address a jurisdictional issue before turning to exhaustion. The screening order allowed Mr. Downey was permitted to proceed against Warden Neal solely on a claim for injunctive relief "related to his need for protection from other inmates." (ECF 5.) The docket reflects that Mr. Downey left ISP in August 2021, and there is no indication from the parties' filings that he is likely to return time anytime in the near future. (*See* ECF 25.) That makes Mr. Downey's claim for injunctive relief

against Warden Neal moot and it must be dismissed.[1] *See* Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996).

Turning to exhaustion, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense that the defendant has the burden of pleading and proving. Jones v. Bock, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." Chambers v. Sood, 956 F.3d 979, 983 (7th Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81 (2006)). Courts take a "strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024.

Inmates are only required to exhaust administrative remedies that are actually available. Woodford v. Ngo, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather whether the process was in actuality available for the prisoner to pursue. Kaba v. Stepp, 458 F.3d 678, 684 (7th

---

[1] The defendants haven't raised this issue, but courts have a "constitutional obligation to resolve the question of mootness and address it *sua sponte* if needed." E.F.L. v. Prim, 986 F.3d 959, 962–663 (7th Cir. 2021) (citation and internal quotation marks omitted).

3

Cir. 2006). Administrative remedies aren't considered "available" when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, *Id*. In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement," and a remedy will be deemed unavailable if prison staff "use affirmative misconduct to prevent a prisoner from exhausting." Dole v. Chandler, 438 F.3d at 809.

The State Prison had a grievance process in place that allows inmates to grieve a variety of matters, including the actions of staff or other concerns related to the conditions of their confinement. (ECF 28-2 at 3.) Inmates are made aware of the policy upon their arrival at the State Prison, and the policy is also available in the prison law library. (ECF 28-1 ¶ 6.) The process consists of three steps: (1) a formal grievance; (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction Grievance Manager. (ECF 28-2 at 3.) The process begins with the inmate submitting a formal grievance no later than 10 business days from the date of the incident giving rise to the complaint or concern. (*Id*. at 9.) The grievance specialist must screen the grievance within 10 days, and either return it to the inmate as procedurally deficient or accept it for filing. (*Id*. at 10.) If accepted for filing, the grievance must be responded to within 15 business days. (*Id*.) If the inmate is dissatisfied with the response, he may appeal through the remaining two steps. (*Id*. at 12-13.)

Official grievance records submitted by the defendants reflect that Mr. Downey didn't file a grievance about the events occurring in January and February 2021

4

related to the broken lock, the failure to protect him from other inmates, or any other issue.² (ECF 28-3.) ISP's grievance specialist also searched prison records to determine whether Mr. Downey filed a grievance related to these events that was rejected for procedural reasons and found no record of any such grievance. (ECF 28-1 ¶ 33.) According to these records, Mr. Downey didn't use the grievance process with respect to the claims he raises in this lawsuit.

In response to the motion, Mr. Downey primarily argues the merits of his failure-to-protect claim, an issue that isn't before the court yet. As to the exhaustion issue, he says: "I submitted several signed grievances in writing on the appropriate form and turned them in. I did send out my various concerns via written grievances to prison personnel through the proper channels now whether they turned them in that is another story."³ (ECF 44 at 2.) He doesn't swear to the truth of this assertion or provide any specifics about when he allegedly filed these grievance forms, to whom he gave them, or what he did to follow up after he allegedly received no response. It's worth noting that Mr. Downey was given several extensions—and a total of approximately five months—to formulate a response to the defendants' motion for

---

² Statewide grievance records reflect that the most recent grievance Mr. Downey filed was in August 2020—before the events giving rise to this lawsuit—at a different facility. (ECF 28-3.)

³ Mr. Downey made an identically worded statement in response to a motion for summary judgment in another lawsuit he filed about the failure of prison staff at Miami Correctional facility to protect him from harm by inmates there during 2020. *See* Downey v. Indiana Dep't of Corr., 3:21-CV-131-JD-MGG (N.D. Ind. filed Feb. 26, 2021). To the extent he is referring to grievances he filed at MCF before the events giving rise to this lawsuit, that would not be sufficient to put staff at the State Prison ISP on notice of problems he was encountering at that facility. *See* Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011) (observing that the purpose of the grievance process is to alert officials to a problem so that corrective action can be taken); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (observing that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought").

summary judgment. Vague assertions aren't enough to create a material dispute over whether he complied with the grievance policy by filing a timely grievance and was thwarted in his efforts to exhaust through affirmative misconduct by prison staff. *See* Schultz v. Pugh, 728 F.3d 619, 620 (7th Cir. 2013) (because the plaintiff failed to provide specifics about how he was prevented from exhausting, summary judgment for the defendants was proper); Trade Fin. Partners v. AAR, 573 F.3d at 407 ("speculation" and "conjecture" is not enough to defeat a motion for summary judgment).

Additionally, even if the court were to presume that Mr. Downey submitted grievances that were ignored or lost, he had remedies available under the grievance policy. If he didn't receive either a receipt or a rejected grievance back from the grievance specialist within 10 days of submitting it, the grievance policy directed him to notify the grievance specialist in writing, which would trigger a duty by the grievance specialist to investigate the matter. (ECF 28-2 at 9.) It he still didn't get a response to his grievance within 20 days, he could proceed to the next step "as though the grievance had been denied." (*Id.* at 12.) Mr. Downey doesn't argue or submit documentation to show that he took either of those steps, and official grievance records reflect that he did not. The defendants have shown that Mr. Downey didn't exhaust his available administrative remedies before filing suit as required by 42 U.S.C. § 1997e(a).

For these reasons, the court DISMISSES AS MOOT the plaintiff's claim for injunctive relief against the Warden is DISMISSED as moot and GRANTS the motion

for summary judgment (ECF 28) is GRANTED as to his remaining claim pursuant to 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED on February 23, 2022

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT